IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

ACF 2006 CORP.,

        Plaintiff,

        vs.                  Case No. CIV-12-161-JTM

JOHN M. MERRITT, ET AL.,

        Defendants.

MEMORANDUM AND ORDER

This matter comes to the court on ACF 2006 Corp.'s Motions to Dismiss Defendant Merritt & Associates Law Offices, P.L.L.C.'s Counterclaims (Dkt. Nos. 103 & 146). Merritt & Associates Law Offices, P.L.L.C. (New Firm) has asserted a Counterclaim against ACF for malicious prosecution in its Answers to the Original and Amended Complaints. *See* Dkt. Nos. 90 & 138. Under Oklahoma law, such actions require proof that ACF filed a previous suit against the New Firm and that the case was terminated in the New Firm's favor, that ACF lacked probable cause for filing suit and acted maliciously, and that the New Firm was damaged. Here, the New Firm has failed to state a claim for malicious prosecution because there has been no previously-terminated case in the New Firm's favor and because ACF had probable cause for bringing suit. Accordingly, as explained below, the court grants the Motions.

## I. Factual Background

### A. The Loans and the Old Firm

The following facts, taken from the Amended Complaint and the Counterclaim, are presumed true.

On October 21, 2002, Merritt & Associates, P.C., an Oklahoma professional corporation, (Old Firm) executed a Master Loan and Security Agreement in favor of ACF 2006 Corp., the successor in interest of Advocate Capital, Inc., a Tennessee corporation with its principal place of business in Nashville. On October 21 of 2005, 2006, and 2008, the Old Firm and John Merritt entered into an Amended and Restated Master Loan and Security Agreement with ACF (Prior Loan Agreements). Mr. Merritt executed two guaranties in ACF's favor on October 21, 2002, and 2006 (Guaranties). On October 21, 2009, the Old Firm and Mr. Merritt executed an Amended Loan and Restated Master Loan and Security Agreement with ACF (Current Loan Agreement), which is governed by Tennessee law.

Under the Prior and Current Loan Agreements (collectively, Loan Agreements), ACF made various loans to the Old Firm. The loans matured and became payable in full on October 21, 2010. ACF later extended the date to October 21, 2011. Under the Loan Agreements, the Old Firm promised to pay ACF the principal amount of the loans and every other obligation owed by the Old Firm to ACF, plus interest and administrative fees. The Old Firm's failure to satisfy its obligations by October 21, 2011, constituted an "Event of Default." Additionally, failure to make a payment when due constituted an Event of Default. The Old Firm agreed to reimburse ACF upon demand for all ACF's costs and expenses incurred in enforcing the Loan Agreements. Under the Loan Agreements and the Guaranties, Mr. Merritt guaranteed payment and performance of the loans and

2

of the Old Firm's obligations to ACF, and agreed he would be jointly and severally liable for the loans and obligations due under the Loan Agreements.

On the Maturity Date, all amounts of unpaid principal, accrued interest, administrative fees, legal fees, and expenses owed to ACF became due and payable in full. Despite ACF's demand, the Old Firm and Mr. Merritt have refused to pay the amounts owed.

When the Loans were made, the Old Firm was engaged in representing clients in personal injury, automobile accidents, medical malpractice, and products liability cases, among others. The Old Firm typically entered into contingent fee arrangements with its clients and advanced expenses to be repaid from any recoveries. When the Old Firm commenced an action on behalf of a client, a lien attached to the client's recovery and the proceeds thereof.

Under the Loan Agreements, the Old Firm granted ACF a continuing security interest in various collateral including, but not limited to the following:

> All accounts, instruments, chattel paper, general intangibles, payment intangibles (all as defined in Article 9 of the Code), and all similar rights that Borrower may have of every nature and kind, including specifically and without limitation, all of Borrower's rights to receive payment or otherwise, for legal and other services rendered and to be rendered, and for costs and expenses advanced and to be advanced, and all other rights and interest that Borrower may have in and with respect to each and every Client Matter.

Dkt. No. 1, Ex. B. The collateral includes any and all amounts that now, or in the future, are owed to the Old Firm, including legal fees and costs and expenses advanced by the Old Firm arising out of any lawsuits.

ACF perfected its security interest in the collateral by filing a UCC financing statement with the Oklahoma County Clerk's office on October 25, 2002. ACF has filed various amendments to that original financing statement. The Loan Agreements provide that ACF shall have all the rights and

remedies generally available to a secured party under the Uniform Commercial Code as adopted in Tennessee.

### B. The New Firm

The Old Firm contends it has ceased operations. Barbara Merritt claims that she is the "Liquidating Trustee" for the Old Firm. The New Firm was formed on September 27, 2011. Several attorneys previously employed by the Old Firm, including Mrs. Merritt and Mark Cox, are now employees of the New Firm. The New Firm is operating at the same address, using the same physical assets, and using the same phone number as the Old Firm. Mrs. Merritt is employed by Legal Research & Management Systems, Inc. (LRMS), an employee leasing company. LMRS has the same address as the Old Firm and the New Firm. Mr. Merritt, who is no longer licensed to practice law, is presently working as a paralegal or non-lawyer consultant for the New Firm through LRMS.

In October 2011, the New Firm substituted itself for the Old Firm as counsel in many of the Old Firm's cases. Mrs. Merritt and Mr. Cox, in their capacity as lawyers for the Old Firm, filed motions to withdraw as counsel. Immediately thereafter, they both filed their entry of appearances in the cases in their capacity as lawyers of the New Firm. In two cases, *Eaton v. Morgan, et al.*, and *Whitfield v. Madaj*, the New Firm has reached settlements in which ACF claims it is entitled to receive the attorneys' fees and expenses recovered. ACF claims that the New Firm is a "mere continuation" of the Old Firm, and, therefore, ACF's collateral includes the attorneys' fees and expenses the New Firm recovers in all cases in which the New Firm substituted itself for the Old Firm.

ACF filed this suit on February 13, 2012, against the Old Firm, the New Firm, John and Barbara Merritt, and several other defendants, seeking, primarily, a money judgment against the New Firm for the Old Firm's obligations and a declaratory judgment of the amount of attorneys' fees and expenses owed to ACF in the cases in which the New Firm was substituted for the Old Firm. On February 16, ACF filed a Motion for Preliminary Injunction (Dkt. No. 12) against the Old Firm, Mr. Merritt, Mrs. Merritt, and the New Firm seeking the following relief:

> (i) restraining and enjoining Defendants, Merritt & Associates, P.C. ("Borrower"), John M. Merritt ("Mr. Merritt"), Carolyn Merritt ("Mrs. Merritt"), Merritt & Associates Law Offices, P.L.L.C. (The "New Law Firm"), and their attorneys, members, managers, employees, agents, representatives, and affiliates from using, disbursing and/or disposing of Lender's collateral; and
>
> (ii) restraining and enjoining the New Law Firm and its attorneys, members, managers, employees, agents, representatives, and affiliates from using, disbursing or disposing of any attorneys' fees and/or expenses received in connection with the cases in which the New Law Firm was substituted for Borrower as counsel to Borrower's clients pending this Court's determination of the amount owed Borrower and in turn to Lender and the payment of such amount to Lender.

Dkt. No. 12, pgs. 1-2. On March 1, 2012, after a hearing on the matter, the court granted the motion and issued a temporary injunction enjoining the above-named defendants from:

> 1. Distributing, disbursing, transferring, spending, or otherwise disposing of any moneys received in connection with the representation of clients in the "Eaton" and "Whitfield" cases, to the extent such funds represent attorney's fees earned or reimbursement for costs advanced in the handling of such cases by any of these defendants.
>
> 2. Distributing, disbursing, transferring, spending, or otherwise disposing of any moneys received, or received in the future, in connection with cases filed by defendant Merritt & Associates, P.C., to the extent such funds represent attorneys fees earned or reimbursement for costs advanced in the handling of such cases.

Dkt. No. 42, pgs. 1-2.

The New Firm initially filed this Counterclaim as part of its Answer (Dkt. No. 90) to the

Original Complaint filed on May 14, 2012. After ACF amended the Complaint, the New Firm reasserted the Counterclaim in its Answer to the Amended Complaint (Dkt. No. 138). The Counterclaim asserts a claim for malicious prosecution against ACF.

## II. Legal Standard

Fed. R. Civ. P. 8(a)(2) provides that a pleading, including a counterclaim, must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must give the defendant adequate notice of what the plaintiff's claim is and the grounds of that claim. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). This simplified notice pleading rule is justified because of the liberal discovery rules and availability of summary judgment to dispose of unmeritorious claims. *Id.*

"In reviewing a motion to dismiss, this court must look for plausibility in the complaint . . . . Under this standard, a complaint must include 'enough facts to state a claim to relief that is plausible on its face.'" *Corder v. Lewis Palmer Sch. Dist No. 38*, 566 F.3d 1219, 1223-24 (10th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[1] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (clarifying and affirming *Twombly's* probability standard). Allegations that raise the specter of mere speculation are not enough. *Corder*, 566 F.3d at 1223-24. The court must assume that all allegations in the complaint are true. *Iqbal*, 129 S. Ct. at 1936-37. "The issue in resolving

---

[1]The prior standard under *Conley v. Gibson*, allowed dismissal only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355, U.S. 41, 45-46 (1957). In *Bell Atlantic Corp., v. Twombly*, the Supreme Court made clear that the *Conley* standard has "earned its retirement." 550 U.S. 544, 562-63 (2007).

a motion such as this is 'not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims.'" *Bean v. Norman*, No. 008-2422, 2010 WL 420057, at *2 (D. Kan. Jan. 29, 2010) (quoting *Swierkiewicz* , 534 U.S. at 511). The Tenth Circuit utilizes a two-step process when analyzing a motion to dismiss. *Hall v. Witteman*, 584 F.3d 859, 863 (10th Cir. 2009). First, the court must identify conclusory allegations not entitled to the assumption of truth. *Id.* Second, the court must determine whether the remaining factual allegations plausibly suggest the plaintiff is entitled to relief. *Id.*

### III. Analysis

Before addressing the merits of ACF's Motions, the court notes that the New Firm did not respond. Under Local Rule 7.1(g), "[a]ny motion that is not opposed within 21 days may, in the discretion of the Court, be deemed confessed." The court is well within its bounds to grant the Motions solely for lack of a response. Nevertheless, the court shall proceed to analyze the merits of the Motions.

The Counterclaim asserts that ACF "filed this frivolous action containing frivolous allegations with a malicious intent to harm Defendant" and filed the suit and sought the injunction "for the purpose of black mailing this Defendant and/or coercing this Defendant using any such injunctive relief that might be afforded as a tool of such black mail or coercion." Dkt. No. 138, pg. 29. The New Firm further alleges that (1) ACF had no evidence to support the claim that the New Firm is a mere continuation of the Old Firm and (2) that ACF knew Mr. Merritt and the Old Firm had abandoned their clients and forfeited all attorneys' fees. ACF contends the court should dismiss the Counterclaim because it is deficient as a matter of law. To decide this issue, the court must turn

to Oklahoma law.

To prevail on a malicious prosecution cause of action, a plaintiff must establish the following elements: "(1) the defendant's institution of the former action; (2) its termination in the plaintiff's favor; (3) the defendant's want of probable cause for pressing the former suit against the plaintiff; (4) the presence of malice in the defendant's conduct; and (5) damages." *Peterson v. Underwood*, 220 P.3d 1158, 1163 (Okla. Civ. App. 2008); *see also Lierly v. Tidewater Petroleum Corp.*, 139 P.3d 897, 903 (Okla. 2006). ACF contends that the New Firm has failed to show the second, third, and fourth elements of the cause of action.

The New Firm has not and cannot establish the second element. Proceedings are not terminated until the final disposition of the case, including any possible appeal. RESTATEMENT (SECOND) OF TORTS § 659, cmt. f and § 674 cmt. j; *see also Greenberg v. Wolfberg*, 890 P.2d 895, 904 n.36 (Okla. 1994). Here, ACF has instituted suit against the New Firm, but this action has not terminated in the New Firm's favor. In fact, the action has not terminated in any party's favor because *this* case is pending. The New Firm's inability to establish this element is, alone, sufficient to sustain ACF's motion.

Even if the New Firm could prove that a previous action was terminated in its favor, it has failed to present sufficient facts showing that ACF lacked probable cause to file suit. Probable cause exists "if the facts and circumstances known to the defendant were such as to justify a person of prudence and caution to reasonably believe that the action of filing suit against the plaintiff was justified, either at common law or under existing statute." *Peterson*, 220 P.3d at 1164 (citing *Mo., Kan., & Okla. Coach Lines v. Meister*, 330 P.2d 579, 582 (Okla. 1958)). Here, ACF has alleged ample facts supporting its claim that the New Firm is the successor corporation or a mere

8

continuation of the Old Firm. The New Firm operates from the same location, employees essentially the same personnel, and uses the same phone number as the Old Firm. And the New Firm represents all, or nearly all, of the Old Firm's clients. Even if this court ultimately concludes that the New Firm is not a successor corporation of the Old Firm, ACF had probable cause for bringing suit against the New Firm under this theory. ACF also had probable cause to seek the injunction, and this court previously held that it had met all the elements necessary when it enjoined the defendants. *See* Dkt. No. 42.

The New Firm has failed to establish that ACF initiated a previous suit against it and that the suit terminated in the New Firm's favor. The New Firm has also failed to show that ACF lacked probable cause for bringing the claims against it or for seeking a preliminary injunction. Because the New Firm has failed to offer sufficient evidence on two of the essential elements of its malicious prosecution Counterclaim, it has failed to state a claim upon which relief may be granted, and this court grants ACF's Motions.

IT IS ACCORDINGLY ORDERED this 3rd day of July, 2012, that ACF 2006 Corp.'s Motions to Dismiss Defendant Merritt & Associates Law Offices, P.L.L.C.'s Counterclaims (Dkt. Nos. 103 & 146) are granted.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE