**IN THE UNITED STATES DISTRICT COURT**
FOR THE WESTERN DISTRICT OF OKLAHOMA
ACF 2006 Corp. (1),

    Plaintiff,

vs.                                                                                              Case No. CIV-12-161

John M. Merritt (1), Merritt
& Associates, P.C. (2), Merritt &
Associates Law Offices, P.L.L.C. (3),
Carolyn Merritt (4), Gary L. Brooks
(5), Ann Brooks (6), Quail Creek Bank,
 N.A. (7), Windle Turley (8), Turley
Law Firm, P.C. (9), James E. Frasier
(10), Frasier, Frasier & Hickman,
L.L.P. (11), and Legal Research &
Management Systems, Inc. (12)

    Defendants.

MEMORANDUM AND ORDER

The court has before it plaintiff ACF 2006 Corp.'s motion for summary judgment (Dkt. 536).

Sandia Safety Sciences, LLC, ERST, Inc., and TKS Consulting, Inc. (hereinafter "the

Intervenors") have filed a joint brief in objection (Dkt. 539), to which ACF has replied (Dkt.

560). The Receiver has filed a memorandum in support of ACF's motion (Dkt. 542). After

reviewing all of the parties' briefs, the court grants summary judgment to ACF.

**I. Relevant Background**

On October 21, 2002, Merritt & Associates, P.C. ("Merrit & Associates") executed a Master

Loan and Security Agreement in favor of ACF, successor in interest to Advocate Capital, Inc.

On October 21 of 2005, 2006 and 2008, Merritt & Associates and Mr. John Merritt entered into

an Amended and Restated Master Loan and Security Agreement with ACF (the "Prior Loan

Agreements"). On October 21, 2009, Merritt & Associates and Mr. John Merritt executed an

Amended and Restated Master Loan and Security Agreement with ACF (the "Current Loan

Agreement").

Under the Prior Loan Agreements and the Current Loan Agreement, Merritt & Associates granted ACF a continuing security interest in various collateral including, but not limited to, the following (the "Collateral"): All accounts, instruments, chattel paper, general intangibles, payment intangibles (all as defined in Article 9 of the Code), and all similar rights that Merritt & Associates may have of every nature and kind, including specifically and without limitation, all of Merritt & Associates' rights to receive payment or otherwise, for legal and other services rendered and to be rendered, and for costs and expenses advanced and to be advanced, and all other rights and interest that Merritt & Associates may have in and with respect to each and every Client Matter. The Collateral includes, but is not limited to, any and all amounts that are now, or in the future, owed to Merritt & Associates including, but not limited to, any and all legal fees now or hereafter due Merritt & Associates, as well as any and all reimbursements due Merritt & Associates for any costs and expenses incurred by Merritt & Associates arising out of any lawsuits.

ACF perfected its security interest in the Collateral by filing a UCC financing statement with the Oklahoma County Clerk's office on October 25, 2002. ACF filed various amendments to its original UCC financing statement with the Oklahoma County Clerk's office. This court recently granted ACF summary judgment on Count 1 of ACF's First Amended Complaint for judgment against Merritt & Associates and Mr. John Merritt for the amounts due under the Loan Agreements. *See* Dkt. 490. That judgment remains unpaid.

On March 25, 2010, Merritt & Associates and Kelli Rice entered into a fee agreement. With respect to the fees to be paid Merritt & Associates, the Fee Agreement provides as follows:

> **THE ATTORNEY'S FEES WILL BE 50% OF THE TOTAL RECOVERY WHETHER BY SETTLEMENT, JUDGMENT OR OTHERWISE. THERE WILL BE NO FEE IF THERE IS NO RECOVERY.** UNLESS CLIENT TERMINATES THIS AGREEMENT OR REQUIRES AN APPEAL TO BE

> FILED. **ATTORNEYS SHALL PAY ONE-HALF (1/2) OF ALL LITIGATION EXPENSES INCURRED IN THE PROSECUTION OF CLIENT'S CLAIMS AND CLIENT SHALL NOT BE RESPONSIBLE TO EVER REPAY TO ATTORNEY THIS AMOUNT UNDER ANY CIRCUMSTANCE. IN THE EVENT OF A RECOVERY, CLIENT SHALL FROM CLIENT'S SHARE OF ANY RECOVERY, REIMBURSE ATTORNEYS THE REMAINING ONE-HALF (1/2) OF THE LITIGATION EXPENSES INCURRED BY ATTORNEYS. IN THE EVENT THERE IS NO RECOVERY, THEN CLIENT SHALL NOT BE RESPONSIBLE TO PAY OR REIMBURSE ANY LITIGATION EXPENSES.** THE EXPENSES OF LITIGATION DO NOT INCLUDE MEDICAL EXPENSES, LIENS, SUBROGATION CLAIMS, OR ANY AMOUNTS WHICH MAY BE OWED FOR PAST DUE CHILD SUPPORT PAYMENTS, FOR WHICH THE CLIENT IS SOLELY RESPONSIBLE.

ACF's Exh. A, at p. 5.) (emphasis added).

On August 31, 2012, the Receiver filed its Motion for Disbursement of Settlement Proceeds in the Rondell Rice Litigation (Docket No. 338) seeking authority to disburse the proceeds from the settlement of the Rice Case. According to the Motion to Disburse, the settlement of the Rice Case resulted in a gross recovery of $700,000 and a defined payment to Merritt & Associates' client of $200,000. According to the Motion to Disburse, Merritt & Associates incurred $191,460.04 in expenses in connection with the Rice Case that remained unpaid at the time of the settlement (the "Expense Claims"). The Motion to Disburse proposed to pay one-half ($95,730.02) to the holders of the Expense Claims and the same amount to ACF. The Receiver offered the following explanation for the proposed distribution:

> Under the Client Settlement Agreement File No. 51611, one-half of all litigation expenses are to be borne by client, one-half absorbed by the Law Firms. As a result, one-half of $191,460.04 is to be borne by the client's share of the settlement sum, one-half paid from the Law Firms' attorney fee amount. As a result ACF 2006 Corp. may hold a lien on the Law Firm's expenses and fee recovery, which is superior to the general unsecured claim of case expense creditors and claimants of expert witness fees. Therefore, unpaid expense claimants or claimants for expert witness fees shall only receive one-half in dollar amount of any outstanding bill. The remaining one-half of the claim of these creditors shall constitute a general unsecured claim of the receivership estate.

Dkt. 338, at p.2, fn. 1.

On September 24, 2012, Intervenors filed their motion to intervene and objection to Motion to Disburse (Docket No. 386). Intervenors hold approximately $170,000 of the unpaid Expense Claims. Intervenors entered into contracts with Merritt & Associates to provide services in connection with the Rice case, and Merritt & Associates has not paid them for the services performed. Under the plain terms of those contracts, these entities agreed to provide professional services to the firm (everything from court-reporting services to complex scientific testing) in exchange for the firm's promise to pay the corresponding charges for those services. Intervenors did not enter into any agreement, and do not have any contractual relationship, with Merritt &

Associates' client in the Rice Case. Merritt & Associates did not grant Intervenors a lien or security interest in any amounts owed to Merritt & Associates by its client in the Rice Case. This Court granted Intervenors' leave to intervene and denied the Motion to Disburse with respect to the Disputed Funds reserving for resolution at a later date the competing claims to the Disputed Funds. *See* Dkt. 389.

**II. Legal Standard: Summary Judgment**

Rule 56(c) of the Federal Rules of Civil Procedure provides, in pertinent part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." The substantive law determines which facts are material. *Anderson v. Liberty Libby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id*. A "genuine" dispute of fact is one on which sufficient evidence exists supporting the claimed factual dispute "to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id*. at 248–49. "A dispute over a material fact cannot be 'genuine' unless a reasonable jury could return a verdict for the nonmoving party." *New Par v. City of Saginaw*, 301 F.3d 390, 394 (6th Cir. 2002). A defendant is entitled to summary judgment on its claim for relief when it appears that no reasonable trier of fact could find other than for the defendant. *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted). Based on the entire record in the case, it is clear that there is no need for a trial in this case and that ACF is entitled to judgment as a matter of law.

**III. Analysis**

The dispute between ACF and Intervenors is governed by Article 9 of the Uniform Commercial Code. Article 9 of the UCC applies "to a transaction, regardless of its form, that creates a security interest in personal property or fixtures by contract." 12A Okla. Stat. Ann. § 9-109(a)(1). A security interest in accounts, thus, falls within the scope of Article 9. The UCC defines "account" as "any right to payment of a monetary obligation, whether or not earned by performance … for services rendered or to be rendered …." 12A Okla. Stat. Ann. § 9-102(a)(2)(A). Courts have uniformly held that contracts for legal fees, including fees in pending contingency fee cases, are accounts for Article 9 purposes.[1]

For a creditor to have a valid security interest under Article 9 of the UCC, the creditor must give value, the debtor must have rights in the collateral and the debtor must execute a written security agreement in favor of the creditor. 12A Okla. Stat. Ann. § 9-203. There is no dispute that ACF gave value to Merritt & Associates, that Merritt & Associates has rights in the amounts owed it

---

[1] See *Cadle Co. v. Schlichtmann*, 267 F.3d 14, 18 (1st Cir. 2001) (finding that amounts to be paid under contingency fee agreements are accounts under Article 9 of UCC); *U.S. Claims, Inc. v. Yehuda Smolar, P.C.*, 602 F.Supp. 2d 590, 597-600 (E.D. Pa. 2009) (finding that the assignment of amounts owed under contingency fee agreement governed by Article 9 of the UCC); *U.S. Claims, Inc. v. Flomenhaft & Cannata, LLC*, 519 F. Supp. 2d 515, 521 (E.D. Pa. 2006) (finding that fee contracts created rights to receive payment for services to be rendered by the law firm on behalf of its clients and thus fell squarely within definition of account); *PNC Bank, Del. v. Berg*, No. 94C-09-208-WTQ, 1997 WL 527978 (Del. Super. Jan. 31, 1997) (finding that an unmatured contingency fee contract is an account under Article 9 of the UCC); *Core Funding Group v. McDonald*, 2006 WL 832833 (Ohio App. 2006) (contingent fee contracts of a law firm-debtor are subject to Article 9).

by the client in the Rice Case and that Merritt & Associates executed a written agreement granting ACF a security interest in all amounts owed it by the client in the Rice Case. There is also no dispute that Merritt & Associates is indebted to ACF, and ACF holds a perfected security interest in all monies owed to Merritt & Associates by its client in the Rice Case.

There is also no dispute that Merritt & Associates did not grant Intervenors—and Intervenors do not hold—a security interest in any monies owed to Merritt & Associates by its client in the Rice Case. Intervenors are merely unsecured creditors of Merritt & Associates.

Even if Merritt & Associates had granted Intervenors a security interest in the monies owed to Merritt & Associates by its client in the Rice Case, that security interest would be subordinate to ACF's security interest. Under the UCC, priority among perfected security interests is determined based on the date of filing or perfection. *See* 12A Okla. Stat. Ann. § 9-322(a)(1) ("Conflicting perfected security interests . . . rank according to priority in time of filing or perfection"). There is no dispute that ACF perfected its security interest on October 25, 2002, well before Intervenors provided any services to Merritt & Associates. There is also no dispute that Intervenors did not file a UCC-1 Financing Statement and did not perfect a security interest in any monies owed to Merritt & Associates by its client in the Rice Case.

Intervenors argue that they are entitled to an "equitable lien" or "constructive trust" on the disputed funds. To the contrary, Article 9 expressly preempts the doctrines of "equitable lien" and "constructive trust" with respect to the creation, perfection and priority of security interests in accounts. 12A Okla. Stat. Ann § 1-103(b). The Official Comments to Section 12A-1-103(b) explain:

> Subsection (b) states the basic relationship of the Uniform Commercial Code to supplemental bodies of law. The Uniform Commercial Code was drafted against the backdrop of existing bodies of law, including the common law and equity, and relies on those bodies of law to supplement it provisions in many important ways. At the same time, the Uniform Commercial Code is the primary source of commercial law rules in areas that it governs, and its rules represent choices made by its drafters and the enacting legislatures about the appropriate policies to be furthered in the transactions it covers. Therefore, while principles of common law and equity may supplement provisions of the Uniform Commercial Code, they may not be used to supplant its provisions, or the purposes and policies those provisions reflect, unless a specific provision of the Uniform Commercial Code provides otherwise. In the absence of such a provision, the Uniform Commercial Code preempts principles of common law and equity that are inconsistent with either its provisions or its purposes and policies.

12A Okla. Stat. Ann § 1-103(b), Official Comment 2 (emphasis added).

Additionally, courts interpreting the UCC have uniformly held that principles of equity cannot be used to supplant or alter the UCC's provisions governing the creation, perfection and priority

of security interests.[2] In *Security National Bank and Trust Co. v. Dentsply Professional Plan*, 617 P.2d 1340 (Okla. 1980), the Oklahoma Supreme Court expressly rejected the creditor's argument that it should apply equitable principles to reinstate a UCC-1 Financing Statement released by mistake. In so doing, the Court explained:

> Although strict adherence to the [UCC] requirements may at times lead to harsh results, efforts by courts to fashion equitable solutions for mitigation of hardships experienced by creditors in the literal application of statutory filing requirements may have the undesirable effect of reducing the degree of reliance the market place should be able to place on the [UCC] provisions. The inevitable harm doubtless would be more serious to commerce than the occasional harshness from strict obedience.

*Id.* at 1343. As the Oklahoma Supreme Court recognized, application of equitable principles in contravention of Article 9 to deprive ACF of its properly perfected, first priority security interest in the Disputed Funds would present a problem for ACF and other lenders who wish to rely on Article 9 in making loans. The court finds that ACF's security interest is superior to the interests of unsecured creditors like the Intervenors.

Intervenors also argue that they must be paid in full before Merritt & Associates is owed anything from its client under the Fee Agreement. Intervenors rely on 5 Okla. Stat. Ann. § 7, which provides that "[i]t shall be lawful for an attorney to contract for a percentage or portion of the proceeds of a client's cause of action or claim not to exceed fifty percent (50%) of the net amount of such judgment as may be recovered." This provision imposes a cap on the amount of attorney's fees to be paid by a client under a contingency fee agreement. The cap is equal to fifty percent of the sum of the gross recovery less the litigation expenses incurred. This provision is intended to protect the client by ensuring that the client receives at least half of the net recovery from the client's case.

Neither the Fee Agreement nor the Motion to Disburse provide for the client to pay attorney's fees in excess of the cap imposed by 5 Okla. Stat. Ann. § 7. The Fee Agreement provides for Merritt & Associates to receive fifty percent of the recovery and to pay fifty percent of the litigation expenses. *See* ACF's Exh. A, at p. 5. Similarly, the Fee Agreement provides for the client to receive fifty percent of the recovery and to reimburse Merritt & Associates for fifty percent of the expenses it incurred. *Id.* The effect of these provisions in the Fee Agreement is that the client is to receive fifty percent of the net recovery and Merritt & Associates is to receive fifty percent of the net recovery. The Motion to Disburse evidences a gross recovery of $700,000 and litigation expenses—both paid and unpaid—of $315,314.27 resulting in a net recovery of $384,685.73. The client will receive $200,000, which is more than fifty percent of the net recovery. Merritt & Associates will receive $184,685.73 in attorney's fees, which is less than

---

[2]*See In re Oriental Rug Warehouse Club, Inc.*, 205 B.R. 407, 414 (Bankr. D. Minn. 1997) (stating "In this case, § 9–306 of the UCC expressly deals with the continuation and perfection of a security interest in non-cash proceeds, and Yashar cannot invoke an equitable lien to negate the identification requirement of the UCC."); *Plains Cotton Coop. Ass'n of Lubbock, Texas v. Julien Co.*, 141 B.R. 359, 383 (Bankr.W.D.Tenn.1992) (holding that "in light of the UCC provisions discussed above which set forth the requirements for liens enforceable against third parties, it may not be concluded that PCCA possesses an equitable lien, that has priority over the institutional lenders' security interest even though it may in fact have had an agreement, equitably and legally enforceable against the prepetition debtor."); *AG Services of America, Inc. v. Empfield*, 587 N.W.2d 871, 874 (Neb. 1999) (stating that if creditor were entitled to equitable lien, such lien would be unperfected and subordinate to perfected security interest); *Garst Seed Co. v. Wilson*, 17 Kan.App.2d 130, 833 P.2d 138 (Kan. App. 1992) (finding that UCC expressly rejects theory of equitable liens).

fifty percent of the net recovery. Thus, the amount to be paid by the client to Merritt & Associates under the Fee Agreement is less than the cap imposed by 5 Okla. Stat. Ann. § 7. Although 5 Okla. Stat. Ann. § 7 imposes a cap on the amount to be paid by the client to Merritt & Associates under the Fee Agreement, Article 9 of the UCC controls the disposition of all amounts to be paid by the client to Merritt & Associates under the Fee Agreement. As discussed above, all amounts to be paid by the client to Merritt & Associates under the Fee Agreement—including all attorneys' fees and reimbursement for expenses incurred—constitute accounts under Article 9 and are subject to ACF's security interest. Under Article 9 of the UCC, all monies owed by the client to Merritt & Associates under the Fee Agreement must be paid to ACF and not to Intervenors and other unsecured creditors.

**IV. Conclusion**

The Fee Agreement between Merritt & Associates and Kelli Rice provides that the attorneys' fees will be fifty percent of the total recovery whether by settlement, judgment, or otherwise. The Fee Agreement provides for the Merritt law firm to receive fifty percent of the recovery and to pay fifty percent of the litigation expenses. It also provides for Rice to receive fifty percent of the recovery and to reimburse Merritt & Associates for fifty percent of the litigation expenses it incurred. The effect of these provisions is that the client, Rice, is to receive half of the net recovery while Merritt & Associates receives the other half, in conformance with Oklahoma law. As such, the source of all of the funds to pay the Intervenors would come from fees or other accounts or contract rights in favor of Merritt & Associates. Since ACF has the first priority security interest in all of the disputed funds, it has priority over the Intervenors' unsecured claims. The Intervenors, by their requested relief, seek to subordinate the interest of the prior perfected security interest of ACF by their theory of an equitable lien. They further seek recognition as a specialized class superior to the interest of other expense claimants in the Rice case and the general unsecured creditors of the law firm. For the reasons listed by the court in its analysis, the Intervenors' lien and constructive trust theories of recovery must be denied. Accordingly, the court grants summary judgment to ACF.

IT IS THEREFORE ORDERED this 7th day of February 2013, that ACF 2006 Corp.'s Motion for Summary Judgment (Dkt. 536) is granted.

                                      s/ J. Thomas Marten_____
                                            J. THOMAS MARTEN, JUDGE